| | |
|---|---|
| JASON TONY REDDEN, | |
| Plaintiff, | Case No. 1:24-cv-349 |
| v. | **COMPLAINT** |
| CONTEMPORARY INFORMATION CORPORATION (CIC), RENT BUTTER LLC, ORIGEN FINANCIAL SERVICES LLC, | |
| Defendants. | |

Jason Tony Redden ("Plaintiff" or "Mr. Redden") by and through his counsel brings the following Complaint against Contemporary Information Corporation ("Defendant CIC" or "CIC"), RENT BUTTER LLC ("Defendant Rent Butter" or "Rent Butter") and Origen Financial Services LLC ("Defendant Origen" or "Origen"), collectively, "Defendants" for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of tenant screening reports that Defendants published to campsite and mobile home park owners, which falsely reported criminal records that did not belong to Plaintiff.

### INTRODUCTION

1.      This is an individual action for damages, costs, and attorney's fees brought against Defendants pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendants are individually consumer reporting agencies ("CRAs") that compile and maintain files on consumers on a nationwide basis. Defendants sell consumer reports, also known as resident or tenant screening reports, generated from their databases and furnish these tenant screening reports to mortgage brokers, mobile home park owners, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers, residents, and tenants.

3. Defendants assembled and published inaccurate resident screening reports to Plaintiff's potential campsite and mobile home park owners, which included criminal records that that did not belong to Plaintiff.

4. In fact, Plaintiff has never been subject to any criminal arrest or prosecution and has no criminal record other than a single, minor traffic infraction that was dismissed.

5. The record reported by Defendant *does not* belong to Plaintiff, rather it belongs to an unrelated consumer.

6. Plaintiff's potential home seller and mobile home park owner denied Plaintiff's housing applications after receiving the tenant screening reports from Defendants, in which Defendants published the criminal records of an unrelated and different consumer.

7. After Plaintiff disputed the inaccurate, stigmatizing information contained within the tenant screening reports, Defendant Rent Butter failed to conduct a reasonable reinvestigation, or any investigation at all, and accordingly failed to delete the disputed information that did not belong to Plaintiff.

2

8.     Defendants' inaccurate reporting could have easily been avoided had Defendants performed a cursory review of the widely available underlying public court records pertaining to the criminal records prior to publishing the information to Plaintiff's prospective camper and mobile home parks.

9.     Defendants do not employ reasonable procedures to assure the maximum possible accuracy of the information they report regarding consumers. Defendants' failure to employ reasonable procedures resulted in Plaintiff's reports being grossly inaccurate.

10.     Defendants committed these violations pursuant to their standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords and potential mobile home park owners with inaccurate information.

11.     Defendants' inaccurate reports cost Plaintiff the ability to purchase a home at a desired mobile park that was suitably accommodating of his needs, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

12.     As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; out-of-pocket costs for hotel stays, loss of time and money trying to correct the tenant screening reports; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, hurt, anxiety, fear, frustration, humiliation, and embarrassment.

3

13. As a result of Defendants' conduct, action, and inaction, Plaintiff brings claims against Defendants for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA and for Defendant Rent Butter failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – namely that which belonged to another consumer – was inaccurate and for Defendant Rent Butter failing to delete the disputed information from the tenant screening report, in violation of the FCRA, 15 U.S.C. § 1681i.

## PARTIES

14. Jason Tony Redden ("Plaintiff" or "Mr. Redden") is a natural person residing in Winston Salem, North Carolina, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

15. Defendant Contemporary Information Corporation ("Defendant CIC" or "CIC") is a Georgia corporation doing business throughout the United States, including the State of North Carolina and in this District, and has a principal place of business located at 42913 Capital Drive, Unit 101, Lancaster, CA 93535 and can be served through its registered agent address, Registered Agent Solutions, Inc., located at 176 Mine Lake Court, Suite 100, Raleigh, NC 27615.

16. Defendant RENT BUTTER LLC ("Defendant Rent Butter" or "Rent Butter") is an Illinois corporation doing business throughout the United States, including the State of North Carolina and in this District, and has a principal place of business located at 4255

4

S Indiana Avenue 201, Chicago, IL 60621. Rent Butter can be served through its registered agent, Thomas Raleigh, located at 4255 S Indiana Ave #201, Chicago, IL 60653.

17. Defendant Origen Financial Services LLC ("Defendant Origen" or "Origen") is a Michigan company doing business throughout the United States, including the State of North Carolina and in this District, and has a principal place of business located at 27777 Franklin Road, Suite 1570, Southfield, MI 48034 and can be served through its Registered Agent address, Telos Legal Corp., located at 186 N. Main St. 2nd Floor, Ste 1, Plymouth, MI 48170.

18. Among other things, Defendants sell consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, mobile park owners and landlords for their use in deciding whether to rent or otherwise offer residency or housing to a prospective resident or tenant. These reports are provided in connection with a business transaction initiated by the consumer.

19. Defendants are each consumer reporting agencies as defined in 15 U.S.C. § 1681a(f) because for monetary fees, they regularly engage in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and use interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

5

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

22.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

23.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

24.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

6

25.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

26.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates tenant screening reports like the one Defendant prepared in Plaintiff's name.

27.     The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit.

28.     In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of tenant screening reports, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

29.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

30.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

31.     Defendant disregarded its duties under the FCRA with respect to Plaintiff's tenant screening report.

## DEFENDANTS' ILLEGAL BUSINESS PRACTICES

7

32. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal, eviction, and civil judgment records. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

33. Tenant Screening Reports are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating tenant screening reports.

34. Tenant Screening companies, like Defendants, collect millions of records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

35. Given that Defendants are in the business of selling tenant screening reports, Defendants should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

36. Defendants place their business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendants to produce reports containing information that is inaccurate and incomplete than it is for Defendants to exert proper quality control over the reports prior to their being provided to Defendants' customers.

37. Defendants report such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs

8

associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

38.     Defendants charge their customers the same price for reports that are grossly inaccurate as they do for accurate reports.

39.     Appropriate quality control review of Plaintiff's report would have made clear that Defendants were reporting information belonging to another consumer.

40.     As a provider of tenant screening reports, Defendants should be aware of the FCRA requirements and are likely members of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies to Purchase a Camper at Lake Myers Campsite

41.     Desiring to move his family from a neighborhood that had become increasingly riddled with crime and shootings where Plaintiff and his family lived in Gastonia, Plaintiff began searching for a camper or mobile home he could purchase and move his family there. Specifically, Plaintiff was searching for a camper or mobile home in a safe and quiet neighborhood, and within his budget.

42.     Moving out of his Gastonia neighborhood was particularly important for Plaintiff who suffered two strokes six months ago, which really scared him. Since then he has been trying to live a more peaceful, calmer life.

43.     In January 2024, Plaintiff took out a $14,000 loan from his 401k and had $4,000 saved up so he could purchase a camper or mobile home.

9

44.     Plaintiff was planning to go on a work trip in early February 2024 even as he was looking for a new home for his family.

45.     Plaintiff had his wife, son, and daughter temporarily move to his father-in-law's house for the one week Plaintiff would be gone for work, and the family moved out of their Gastonia home in mid-February.

46.     Upon his return, Plaintiff intended to purchase and have his family move into a camper or mobile home.

47.     In late February/early March 2024, Plaintiff and his wife found a wonderful camper that they loved and was available for sale at Lake Myers RV campsite.

48.     Plaintiff and his wife were particularly excited about the camper and location because the camper only cost $8,000 and was parked at a year-around campsite that cost only $3,000 every six months, which was well within Plaintiff's budget and a significant savings from what Plaintiff and his wife planned and were prepared to spend. The location was also wonderful as it was next to a lake where he and his family could go fishing and was only 30 minutes away from Plaintiff's wife's father, who is recovering from cancer.

49.     In order to purchase the camper, Plaintiff and his family were required to pass a background check to rent the campsite at the RV park.

50.     On or about March 2, 2024, Plaintiff and his family applied to purchase the camper and to rent space at Lake Myers RV.

**Defendant Origen Published an Inaccurate Tenant Screening Report to Lake Myers RV**

10

51.     Lake Myers RV contracted with Defendant Origen to conduct tenant screening reports on prospective residents to determine whether the prospective resident is eligible to park their camper in their RV park.

52.     On or about March 2, 2024, Defendant Origen sold a tenant screening report about Plaintiff to Lake Myers RV, wherein Defendant published what it purported to be Plaintiff's criminal history.

53.     The tenant screening report, identified as a Background Report by Defendant, is a consumer report regulated by the FCRA.

54.     Within that tenant screening report, Defendant published inaccurate information about Plaintiff.

55.     Specifically, the tenant screening report included the following criminal record from Osceola County, Florida:

## Background Report

Criminal and Public Record Report - Detailed Results

| FL OSCEOLA COUNTY RESULT | Applicant Information Submitted |
|---|---|
| Report Date: 03-02-2024 | Name: Jason Tony Redden |
| Name: JASON REDDEN | DOB: ▇▇▇▇ SSN: ▇▇▇▇ |
| DOB: ▇▇▇▇ Age: 35 | |

| Physical Details | | Additional Info |
|---|---|---|
| Sex: | Eyes: | None |
| Height: | Weight: | |
| Hair: | Race: | |
| | Ethnicity: | |

State: FL                                                Court Jurisdiction: FL OSCEOLA COUNTY

| Case Number: | UNKNOWN |
|---|---|
| Category: | CRIMINAL |
| Court Name: | |
| Court Type: | CRIMINAL |

### Offenses

| Arresting Agency: | |
|---|---|
| Category: | CRIMINAL |
| Counts: | 1 |
| Offense Code: | BATTERY; TOUCH OR STRIKE |
| Offense Date: | |
| Offense Description: | BATTERY; TOUCH OR STRIKE |

| Arresting Agency: | |
|---|---|
| Category: | CRIMINAL |
| Counts: | 1 |
| Offense Code: | BATTERY LEO/FIREFGHTR/INTK OFF |
| Offense Date: | |
| Offense Description: | BATTERY LEO/FIREFGHTR/INTK OFF |

| Arresting Agency: | |
|---|---|
| Category: | CRIMINAL |
| Counts: | 1 |
| Offense Code: | RESISTING OFFICER W/ VIOLENCE |
| Offense Date: | |
| Offense Description: | RESISTING OFFICER W/ VIOLENCE |

56.    The criminal record published by Defendant Origen about Plaintiff to Lake Myers RV **did not** belong to Plaintiff.

57.    Defendant Origen published inaccurate information about Plaintiff. The above-referenced information should not have been included in any tenant screening report about Plaintiff.

58.     Specifically, it is indisputable that prior to furnishing the report about Plaintiff to Lake Myers RV, Defendant Origen failed to consult widely available public court records in Osceola County, Florida, which indicate that the aforementioned records do not belong to Plaintiff.

59.     A cursory review of the widely available underlying public court records confirms that the records belong to Jason Britt Redden ("Convicted Britt Redden"). Defendant's unreasonable or non-existent procedures allowed Defendant Origen to publish a report about Plaintiff wherein Defendant Origen mixed the criminal history of Convicted Britt Redden into Plaintiff's same report.

60.     Had Defendant Origen actually consulted or obtained the widely available underlying public court records, it would have seen the obvious discrepancies between Convicted Britt Redden and Plaintiff.

61.     The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Britt Redden include the following:

    (a)     Plaintiff's legal name is "Jason *Tony* Redden" but the name of the individual in the criminal record published by Defenant about Plaintiff as confirmed in the underlying public court record is "Jason ***Britt*** Redden;"

    (b)     The three cases in Defendant's report about Plaintiff all happened in Florida, yet Plaintiff has never lived in Florida in his life. Moreover, the address on file for Case No. 2012-CF-003246 is 5603 Porshe Lane,

13

Austin TX 78789, which was later changed to 18228 Mammoth Cave

Blvd, Pflugerville, TX 78660. PC has never lived in or even been to

Texas.

    (c)    Plaintiff's Social Security number, which was provided to Defendant

is contained on the face of the tenant screening report is entirely

different than that of Convicted Britt Redden as confirmed by the

underlying public court records.

62.    The sole reason the inaccurate criminal record was reported as belonging to Plaintiff was that Defendant Origen failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's prospective RV park owner.

63.    Had Defendant Origen followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing battery and resisting officer with violence charges belong to Convicted Britt Redden who has a different middle name than Plaintiff, a different Social Security Number and lives in a state Plaintiff has never even been to.

64.    In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective RV park owner inaccurate information about Plaintiff, Defendant Origen failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Lake Myers RV Denies Plaintiff's Housing Application**

14

65.     On or about March 2, 2024, Plaintiff and the owner of the camper went into the Lake Meyers office to begin the process of transferring ownership of the camper to Plaintiff.

66.     Both Plaintiff and the camper owner called the Lake Meyers RV office over the next two weeks to find out why there was such a delay, but the office simply responded that they were unable to share any information about the results of the background check.

67.     Shortly thereafter, Plaintiff obtained a copy of the tenant screening report and was shocked and humiliated upon reviewing and realizing that the criminal records of Convicted Britt Redden were published in the tenant screening report Defendant sold about Plaintiff to Lake Myers RV.

68.     Plaintiff contacted Lake Myers RV and informed them that the criminal record did not belong to him and that he had no criminal record whatsoever.

69.     Plaintiff was very panicked, confused, and concerned about the impact of the records of Convicted Britt Redden being reported on the tenant screening report – specifically, the impact of the same on his future.

70.     Specifically, Defendant Origen matched Plaintiff and Convicted Britt Redden and published the criminal record of Convicted Britt Redden onto the tenant screening report about Plaintiff and sold that report to Plaintiff's prospective RV park.   This exculpatory public record information was widely available to Defendant Origen prior to publishing Plaintiff's tenant screening report to Lake Myers RV, but Defendant Origen failed to perform even a cursory review of such information.

15

71.     Plaintiff never received a pre-adverse action letter or an adverse action letter from Defendant Origen (as is required by law), but the camper owner and Lake Meyers RV stopped communicating with Plaintiff, so he knew he had been denied to the false reporting by Defendant Origen that he was a violent felon.

72.     Plaintiff still feels embarrassed and humiliated that Lake Meyers RV and the camper owner think he is a violent felon.

### Plaintiff Applies to Purchase a Mobile Home with Trubild

73.     Distraught and disappointed about not being able to get approved to purchase the camper at Lake Myers RV and needing to urgently find a place to move his family, Plaintiff and his wife found a mobile home that met his family's needs at a community managed by Trubuild Property Management ("Trubild").

74.     The mobile home was ideal because it was located out in the country in a quiet and calm area which suited Plaintiff's needs very well, especially given the two strokes he had just suffered and after which he resolved to live in a very peaceful environment.

75.     Accordingly, on or about March 12, 2024, Plaintiff and his family applied to purchase the mobile home and paid a $100 fee to complete the background check.

### Defendant Rent Butter Published an Inaccurate Tenant Screening Report to Trubild

76.     Trubild contracted with Defendant Rent Butter to conduct tenant screening reports on prospective mobile home buyers to determine whether the prospective mobile home buyer is eligible to buy their mobile homes.

16

77.     On or about March 21, 2024, Defendant Rent Butter sold a tenant screening report about Plaintiff to Trubild, wherein Defendant Rent Butter published what it purported to be Plaintiff's criminal history.

78.     The tenant screening report, identified as Report by Defendant Rent Butter, is a consumer report regulated by the FCRA.

79.     Within that tenant screening report, Defendant Rent Butter published inaccurate information about Plaintiff.

80.     Specifically, the tenant screening report included two felony convictions from Texas that appeared in the report as follows:





| Name | Case | DOB | Category | Source | Status | Scars |
|------|------|-----|----------|--------|--------|-------|
| JASON REDDEN | 17-2480-K26 | ▆▆▆ | CRIMINAL/TRAF | TX DEPARTMENT OF PUBLIC SAFETY | - | - |

**OFFENSES**

CaseType: FELONY 3RD DEGREE
Description: ASSAULT FAM/HOUSE MEM IMPEDE BREATH/CIRCULAT
ArrestDate: 2017-12-18
SuspendedSentence: TX236065C
ArrestingAgency: CEDAR PARK POLICE DEPARTMENT
Disposition: CONVICTED
DispositionDate: 06/28/2018
OffenseDate: 12/18/2017
OffenseCode: 13990076
NCICcode: 1399
Court: TX246015J - 26TH DISTRICT COURT
CourtCosts: $259.00

81.　The felony conviction criminal records published by Defendant Rent Butter about Plaintiff to Princeton Properties *did not* belong to Plaintiff.

82.　Defendant Rent Butter published inaccurate information about Plaintiff. The above-referenced information should not have been included in any tenant screening report about Plaintiff.

83.　Specifically, it is indisputable that prior to furnishing the report about Plaintiff to Trubild, Defendant Rent Butter failed to consult widely available public court records in Texas, which indicate that the aforementioned records do not belong to Plaintiff.

84.　A cursory review of the widely available underlying public court records confirms that the records belong to Convicted Britt Redden. Defendant Rent Butter's unreasonable or non-existent procedures allowed Defendant Rent Butter to publish a report about Plaintiff wherein Defendant Rent Butter mixed the criminal history of Convicted Britt Redden into Plaintiff's same report.

18

85. Had Defendant Rent Butter actually consulted or obtained the widely available underlying public court records, it would have seen the obvious discrepancies between Convicted Britt Redden and Plaintiff.

86. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Britt Redden include the following:

(a) Plaintiff's legal name is "Jason *Tony* Redden" but the name of the individual in the criminal record published by Defenant about Plaintiff as confirmed in the underlying public court record is "Jason *Britt* Redden;"

(b) The two felony cases in Defendant's report about Plaintiff both happened in Texas, yet Plaintiff has never lived in Texas in his life. Moreover, the address on file for both cases is in Texas where Plaintiff has never been, let alone lived.

(c) Plaintiff's driver's license number does not match the driver license number associated with both cases Defendant inaccurately reported;

(d) Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the tenant screening report is entirely different than that of Convicted Britt Redden as confirmed by the underlying public court records.

19

(e) The public court records of the above convictions contain a mugshot photo of Convicted Britt Redden which does not look anything like the photo of Plaintiff on Plaintiff's driver's license

87. The sole reason the inaccurate criminal record was reported as belonging to Plaintiff was that Defendant Rent Butter failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's prospective mobile home park.

88. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing injury to child/elderly/disabled and assault felony convictions belong to Convicted Britt Redden who has a different middle name than Plaintiff, a different driver's license, a different Social Security Number, and lives in a state Plaintiff has never been to or lived in.

89. In preparing and selling a consumer report about Plaintiff, wherein Defendant Rent Butter published to Plaintiff's prospective mobile home seller inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Trubild Denies Plaintiff Housing**

90. On March 21, 2024, Plaintiff was notified by Trubild that his application to purchase a mobile home and reside within Trubild's mobile home park was denied as a direct result of the false felony criminal record Defendant published about Plaintiff.

91. Shortly thereafter, Plaintiff obtained a copy of the tenant screening report and was shocked and humiliated upon reviewing and realizing that the felony criminal record

20

of Convicted Britt Ridden was also published in the tenant screening report Defendant sold about Plaintiff to Trubild.

92.     Plaintiff contacted Trubild and informed them that the criminal records did not belong to him and he has no criminal record whatsoever.

93.     Plaintiff was very panicked, confused, and concerned about the impact of the records of Convicted Britt Redden being reported on the tenant screening report – specifically, the impact of the same on his future.

94.     Specifically, Defendant Rent Butter matched Plaintiff and Convicted Britt Redden and published the criminal record of Convicted Britt Redden onto the tenant screening report about Plaintiff and sold that report to Plaintiff's prospective mobile home park. This exculpatory public record information was widely available to Defendant Rent Butter prior to publishing Plaintiff's tenant screening report to Trubild, but Defendant failed to perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant Rent Butter's Tenant Screening Report**

95.     On March 22, 2024, desperate to purchase a mobile home and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Defendant Rent Butter.

96.     Plaintiff was directed by Defendant Rent Butter to dispute with Defendant CIC using the CIC online portal.

97.     Plaintiff explained to Defendant CIC that he was disputing the two felonies that did not belong to him but instead belonged to "Jason Britt Redden."

21

98. Plaintiff also stated that Plaintiff had never lived in Texas and Plaintiff attached the criminal records of Convicted Britt Redden, which Plaintiff said he was able to obtain online with little time or effort.

**Defendant Fails to Conduct a Reasonable Reinvestigation and Correct Plaintiff's Tenant Screening Report**

99. On March 22, 2024, Plaintiff received confirmation of his dispute to Defendant Rent Butter from Defendant CIC, who provided the subject false criminal records to Defendant Rent Butter.

100. Defendants CIC and Rent Butter failed to issue a corrected tenant screening report to Trubild.

101. Despite Plaintiff's dispute, Defendants CIC and Rent Butter failed to conduct a reasonable reinvestigation of Plaintiff's March 22, 2024 dispute and failed to delete the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

102. Because Defendants CIC and Rent Butter failed to issue a corrected tenant screening report, Trubild did not reconsider its decision to deny Plaintiff's application to buy a mobile home in their park.

103. But for Defendant CIC's and Defendant Rent Butter's inaccurate tenant screening report, Plaintiff's mobile home park application would have been approved and he and his family would be living there now enjoying the peaceful surroundings. Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendants' erroneous reporting.

22

104. Defendant CIC and Defendant Rent Butter's false report cost Plaintiff a housing opportunity that met his needs, including those attendant to affordability, safety, and proximity to work, friends, and family.

105. Plaintiff was looking forward to living at Trubild because it was in a safe neighborhood, was located in the countryside providing the serenity Plaintiff requires for his health following two strokes, and was near the major highways, his work and family, and was within his budget.

106. Due to Defendant's unreasonable procedures and shoddy, if any, dispute reinvestigation, and despite Plaintiff's continued efforts to seek housing, Plaintiff is still without a home of his own.

107. More specifically, Plaintiff has been forced to live in a hotel while his wife and children stay with his wife's father, which is unsettling to say the least.

108. Plaintiff's father's home is too small for Plaintiff to also live there. Plaintiff could have long ago moved his family to the mobile home he was ready to purchase, but for Defendants' false criminal report about him.

109. Plaintiff is only able to see his wife about once per week.

110. Moreover, Plaintiff was extremely offended with the false felony convictions being reported by Defendant Rent Butter about him as he grew up with a disabled parent whom he cared for many years. It was especially hurtful to Plaintiff that the report insinuated that Plaintiff harmed disabled people.

111.  There are only so many mobile home parks close enough to Plaintiff's job, and he is concerned his reputation has now been irreparably damaged at two of them due to Defendants.

112.  The injuries suffered by Plaintiff as a direct result of Defendants CIC and Defendant Rent Butter's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendants' conduct would have given rise to causes of action based on defamation and invasion of privacy.

113.  As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; out-of-pocket cost of hotel stays; loss of time and money trying to correct the tenant screening report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

114.  Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

115.  Defendants are each a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

116.  At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

24

117.   At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

118.   Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the tenant screening report it sold about Plaintiff as well as the information it published within the same.

119.   As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; cost of hotel stays; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

120.   Defendants willfully violated 15 U.S.C. § 1681e(b) in that their conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

121.   Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
## Failure to Perform a Reasonable Reinvestigation
## (Defendants Rent Butter and CIC)

122.   Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

123.   The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

124.   The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

125.   On at least one occasion during 2024, Plaintiff disputed the inaccurate information with Defendants Rent Butter and CIC and requested that Defendants correct and/or delete the inaccurate information in the employment report that is patently inaccurate, misleading, and highly damaging to him, namely, stating that Convicted Britt Redden's records belong to Plaintiff.

126.   In response to Plaintiff's dispute, Defendants Rent Butter and CIC failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the tenant screening report and refused to correct the tenant screening report at issue.

26

127. Defendants violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to delete the disputed inaccurate information from the subject tenant screening report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

128. As a result of Defendant Rent Butter's and CIC's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; cost of hotel stays, loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

129. Defendants Rent Butter and CIC willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

130. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendants Rent Butter and CIC in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendants negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 26th day of April 2024.

**CONSUMER ATTORNEYS**

By: */s/ Dawn McCraw*
Dawn McCraw, NC Bar No. 54714
CONSUMER ATTORNEYS
8245 N. 85th Way
Scottsdale, AZ 85258
T: (602) 807-1527
E: dmccraw@consumerattorneys.com

*Counsel for Plaintiff,*
*Jason Tony Redden*

28